AO 440 (Rev. 10/93) Summons in a Civil Action - SDNY WEB 4/99

# United States District Court

SOUTHERN DISTRICT OF NEW YORK

ALLA SHAPIRO,

Plaintiff

v.

BANK OF AMERICA CORPORATION, VIKRAM KURIYAN AND ROGER SAYLER,

Defendants

## SUMMONS IN A CIVIL CASE

CASE NUMBER: **06 CV 6830**

**JUDGE COTE**

TO: (Name and address of defendant)

BANK OF AMERICA CORPORATION, 40 West 57th St., New York,NY 10019
VIKRAM KURIYAN, 40 West 57th St., New York,NY 10019
ROGER SAYLER,40 West 57th St , New York,NY 10019

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

Julia Paskalova, Esq.
Gary Tsirelman, P.C.
55 Washington St., Suite 606
Brooklyn NY 11201

an answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You must also file your answer with the Clerk of this Court within a reasonable period of time after service.

J. MICHAEL McMAHON
CLERK

Marcos Quintero
(BY) DEPUTY CLERK

SEP 0 6 2006
DATE

GARY TSIRELMAN P.C.
Julia Paskalova (JP0950)
55 Washington St. Suite 606
Brooklyn, New York 11201
(718) 438-1200
Attorney for Plaintiff

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------x

ALLA SHAPIRO,

Plaintiff,

- against -

BANK OF AMERICA CORPORATION,
VIKRAM KURIYAN AND ROGER SAYLER,

Defendants.

----------------------------------------------------------------x

Index No.

COMPLAINT

JURY TRIAL DEMANDED

Plaintiff Alla Shapiro, by her attorneys, alleges as follows:

## NATURE OF THE CASE

1. This is employment discrimination and equal rights law suit against Defendants Bank of America Corporation (from hereon "Bank"). Vikram Kuriyan (from hereon "Mr. Kuriyan") and Roger Sayler (from hereon "COO"), (collectively, "Defendants") under Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112-12117 (amended by the Civil Rights Act of 1991, Pub.L.No. 102-166) ("ADA"), the Civil Rights Act of 1964, as amended 42 U.S.C. §§ 2000e et seq. ("Title VII"), the New York State Human Rights Law, N.Y. Executive Law §§ 290 et seq. ("State HRL"), the New York City Human Rights Law, N.Y. City Administrative Code §§ 8-101 et seq. ("City HRL") and New York State Equal Pay Act, Labor Law §194. Specifically, Defendants discriminated against Ms. Shapiro based on her gender and her pregnancy, paid her less compensation than equally qualified male employees, created a hostile work environment and terminated her employment because of her gender and her pregnancy and also as a retaliation to her complaint.

Furthermore, plaintiff also asserts claims herein under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101, et seq. because defendants engaged in numerous intentional acts which, inter alia, constituted a continuous pattern of discrimination based upon Ms. Shapiro's disability or perceived disability.

2. Moreover, as the following additional causes of action are based on the same facts and arise out of the same occurrences as the preceding discrimination claims, this civil action is also for damages and remedies against the Defendants for prima facie tort and intentional infliction of emotional distress upon Ms. Shapiro.

3. Ms. Shapiro has filed this lawsuit because Defendants have maintained a discriminatory work place in which she and other female employees were denied treatment and compensation commensurate with men and they encountered discriminatory treatment during their pregnancy. In addition, Ms. Shapiro suffered retaliation for opposing Defendants' unlawful employment practices.

4. Ms. Shapiro started working for the Bank's predecessor-in-interest. Fleet Boston's asset management department Columbia Management Group as an Associate, in July of 2003.

5. Ms. Shapiro was a high performer, receiving bonuses and compensation increases, despite various discriminatory practices described later.

6. In April of 2004, Fleet Boston was acquired by the Bank. In December of 2004, Ms. Shapiro brought the compensation statistics to her immediate supervisor, Mike Welhoelter, who in his turn brought the issue to Mr. Kuriyan and Roger Sayler (hereinafter "COO"). The statistics showed that Ms. Shapiro was significantly underpaid.

7. The Bank conducted an independent compensation research which showed that Ms. Shapiro was significantly underpaid. Notably, Mr. Welhoelter resigned in June 2005.

8. In July 2005 Ms. Shapiro got a $10,000.00 raise, but even after the raise her salary remained significantly below the average.

9. At the same time, the Bank began a campaign of retaliation against Ms. Shapiro, by, among other things, interfering with her ability to perform her job through reducing and marginalizing Ms. Shapiro's responsibilities. Moreover, Mr. Kuriyan told other employees not to spend time with her.

10. In September 2005, Ms. Shapiro met with Mr. Kuriyan to inquire about her responsibilities. During that meeting, Mr. Kuriyan learned that Ms. Shapiro was pregnant.

11. When Mr. Kuriyan learned that Ms. Shapiro was pregnant, he in essence suggested that Ms. Shapiro resign.

12. After that conversation, Ms. Shapiro complained to the Advice and Counsel unit at the Bank, and to the COO.

13. After Ms. Shapiro's complaint, the Bank completed its campaign of retaliation against Ms. Shapiro by terminating her employment on pretextual grounds.

PARTIES

14. Plaintiff Alla Shapiro, a female born on August 15, 1974 in Ukraine, resides in the State of New Jersey.

15. Ms. Shapiro was employed by the Fleet Boston and its successor-in-interest Bank from July 2003 to September 2005.

16. Defendant Bank is a domestic business corporation with offices within this judicial district and elsewhere. Defendant Bank is in the business of providing broad financial services to corporations, financial institutions, and other institutional and individual investors.

17. Defendant Vikram Kuriyan is the Managing Director of Quantitative Strategies Group ("QSG") at the Bank.

18. Defendant Roger Sayler is the Chief Operating Officer of Columbia Management, an asset management department which includes QSG.

19. Ms. Shapiro worked at the QSG at the Bank.

20. At all times relevant to this action, the Bank has been an employer engaged in an industry affecting interstate commerce.

21. At all times relevant to this action, the Bank has employed over 500 people.

22.The Bank meets the definition of "employer" under Title VII, the State HRL, and the City HRL.

JURISDICTION

23. This Court has subject matter jurisdiction over the Title VII claim under 28 U.S.C. §§ 1331 and 1343, because it arises under the laws of the United States and is brought to recover damages for deprivation of equal rights. This Court has supplemental subject matter jurisdiction over the State HRL and City HRL claims under 28 U.S.C. § 1367, because they arise from a common nucleus of operative facts with the federal claims and are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

24. This Court has supplemental subject matter jurisdiction over intentional infliction of emotional distress and prima facie tort claims because they arise from a common nucleus of operative facts with the federal claims and are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

25. Ms. Shapiro has complied fully with any and all prerequisites to jurisdiction in this Court under Title VII, the State HRL, and the City HRL.

26. Contemporaneously with the filing of this Complaint, Ms. Shapiro has served a copy of this Complaint, along with a letter of explanation, on the New York City Commission on Human Rights and the Office of the Corporation Counsel of the City of New York, satisfying the requirements of Section 8-502 of the New York City Administrative Code.

PROCEDURAL HISTORY
EEOC Determination

27. On December 29, 2005, Ms. Shapiro filed a timely charge of discrimination against the Bank with the Equal Employment Opportunity Commission ("EEOC") complaining of the unlawful actions described herein.

28. On or about June 12, 2006, the EEOC issued Notice of Right to Sue. This complaint timely followed.

VENUE

29. Venue is proper in this judicial district under 28 U.S.C. § 1391(b), (c) and 42 U.S.C. § 2000e-5(f)(3), because the Bank has offices, conducts business, and can be found in this district, and the causes of action arose and the acts and omissions complained of occurred therein.

MS. SHAPIRO'S EMPLOYMENT HISTORY AT THE BANK

Background

30. Ms. Shapiro received an MBA degree from the New York University Stern School of Business Administration. She graduated at the top twenty five percent of her class.

31. Ms. Shapiro also holds a Bachelor of Science degree in Computer Science from USC. She was one of the best students in her class.

32. In July 2003, Ms. Shapiro began working at the Fleet Boston's asset management department Columbia Management Group. Her title was an Associate and her position was Intermediate Portfolio Manager.

33. Throughout the course of her employment with the Defendants Ms. Shapiro was qualified for her position and performed her duties in a professional and competent manner. Ms. Shapiro was a devoted employee, interested in professional advancement and development.

34. Because of her strong performance, Ms. Shapiro received salary increases and bonuses.

35. As stated by Mike Welhoelter in her 2003 Performance Evaluation, "in a short amount of time Alla made significant enhancements to our investment process".

DISPARATE TERMS AND HOSTILE CONDITIONS OF EMPLOYMENT
Disparate Treatment and Acts of Discrimination Based on Sex and Pregnancy

36. On information and belief, at all relevant times, all of the highest paid employees in the QSG were men.

37. On information and belief, at all relevant times, all of the highest paid employees in the Columbia Management Group were men.

38. On information and belief, at all relevant times, the men at QSG who were less or no more qualified then Ms. Shapiro received a higher total compensation.

39. On information and belief, at all relevant times, the men at Columbia Management Group who were less or no more qualified than Ms. Shapiro received a higher total compensation.

40. Ms. Shapiro was subjected to disparate treatment in connection with the award of bonuses.

41. On information and belief, at all relevant times, women at QSG were subjected to disparate treatment in connection with the award of bonuses.

42. On information and belief, at all relevant, times, the Bank has a pattern of paying female employees salaries which are substantially lower than the salaries paid to male employees performing similar work, with similar or lesser skills, and with similar or lesser experience. Moreover, the Bank also has a pattern of manipulating bonus and commission payments to give preferential treatment to male employees and to discriminate against female employees. The combined result is a significant disparity in the total compensation paid to female employees as compared to similarly situated male employees.

43. On information and belief, at all relevant, times, the Bank discriminates against female employees by steering more business to male employees and away from female employees. Thus,

the Bank creates an obstacle to female employees gaining the experience and prominence associated with these assignments which in turn has an adverse affect on both their future career paths and on their current income.

44. On information and belief, Mr. Kuryan denies female employees the same mentoring and business development opportunities that are afforded male employees.

45. In December 2003, Ms. Shapiro had a performance evaluation during which she received individual ratings of "High Performer" and "Oustanding Perfomer", with Overall Performance Rating as High Performer.

46. In April of 2004, Fleet Boston was acquired by the Bank. In December of 2004, Ms. Shapiro brought the compensation statistics to her immediate supervisor, Mike Welhoelter, who in his turn brought the issue to Mr. Kuriyan and Roger Sayler (hereinafter "COO"). The statistics showed that Ms. Shapiro was significantly underpaid. Mike Welhoelter resigned in June 2005.

47. In December 2004, Ms. Shapiro had a performance evaluation during which she received a rating of 1.95 on a scale where 1 is "exceeded expectations" and 2 is "met expectations".

48. The Bank conducted an independent compensation research which showed that Ms. Shapiro was significantly underpaid. In fact, both her salary and her bonus were below the 25th percentile for the years 2003 and 2004.

49. In July 2005 Ms. Shapiro got a $10,000.00 raise, but even after this raise her salary remained significantly lower than the twenty fifth percentile annual income of Ms. Shapiro's peers in the industry.

50. At the same time, the Bank began a campaign of retaliation against Ms. Shapiro, by, among other things, interfering with her ability to perform her job. Moreover, Mr. Kuriyan told other employees not to spend time with her.

51. Mr. Kuriyan ignored Ms. Shapiro's requests for work. He did not want Ms. Shapiro to talk to other people in the group about her role. He also told her on a number of occasions that the Bank will not pay her as much as she could get outside of the Bank of America.

52. Ms. Shapiro felt totally isolated and an outsider.

53. In September 2005 Mr. Kuriyan learned that Ms. Shapiro was pregnant.

54. When Mr. Kuriyan learned that Ms. Shapiro was pregnant, he in essence suggested that Ms. Shapiro resign.

55. Specifically, Mr. Kuriyan asked Ms. Shapiro why she wanted to work given that she was pregnant, why she needed all the stress and toxins resulting from work-related stress, which is harmful to Ms. Shapiro and her baby.

56. Ms. Anjhelika Sakharny, another employee at QSG and Mr. Kuriyan's former assistant, who later was fired, was mistreated by Mr. Kuriyan during her pregnancy.

57. Ms. Anjhelika Sakharny did not receive raises or bonuses commensurate with raises or bonuses awarded to males.

58. Another former employee of the Bank, Sergey Tishchenko, informed Ms. Shapiro that Mr. Kuryan told the whole group not to spend time with Ms. Shapiro and that the project she was working on was of no priority to anyone.

59. After the conversation during which Mr. Kuriyan learned that Ms. Shapiro was pregnant and during which he in essence suggested that Ms. Shapiro resign, Ms. Shapiro complained to the Advice and Counsel unit at the Bank, and to the COO.

60. After Ms. Shapiro's complaint, COO invited her for a meeting during which he informed her that her position would be eliminated.

61. Mr. Kuriyan had the authority to alter the terms and conditions of Ms. Shapiro's employment, he could grant or deny job benefits, discipline her or terminate her employment.

62.COO had the authority to alter the terms and conditions of Ms. Shapiro's employment, he could grant or deny job benefits, discipline her or terminate her employment.

63. Mr. Kuriyan treated other female employees in the same manner thereby creating a hostile work environment. Mr. Kuriyan did not treat the male employees in this manner.

64. Any explanation that Defendants provided for mistreatment of Ms Shapiro is a pretext for discrimination, both pregnancy and gender.

65. On information and belief no effort was made by COO to stop discrimination and mistreatment that were brought on by Mr. Kuriyan.

66. Moreover, the Bank initiated a retaliatory campaign to diminish, demean, humiliate, embarrass, isolate, and ostracize Ms. Shapiro in the workplace.

67. Mr. Kuriyan consistently failed to communicate with Ms. Shapiro about important matters, such as career development.

68. By his disparagement and mistreatment of Ms. Shapiro, Mr. Kuriyan diminished Ms. Shapiro's standing within the Bank and with its employees and colleagues.

69. The foregoing retaliatory actions created a hostile work environment for Ms. Shapiro.

70. These retaliatory actions impeded Ms. Shapiro's ability to perform her job and adversely affected the terms and conditions of her employment, and caused her physical injuries.

71. All of the foregoing conduct by the Bank was part of a pattern and practice of discrimination by the QSG and the Bank against females in the company.

72. All of the foregoing conduct by the Bank constitutes unlawful discrimination and retaliation against Ms. Shapiro and was malicious and reckless in disregard of Ms. Shapiro's rights.

Ms. Shapiro's Losses Resulting From Defendants Discrimination and Retaliation

73. As a result of Defendants' discrimination and harassment, Ms. Shapiro has suffered substantial loss of income and employment-related benefits. Since July 2003 and until October 2005 the Bank has paid Ms. Shapiro less than it would have paid her if she had not been subjected to sex discrimination and retaliation.

74. Ms. Shapiro did not receive the prorated bonus for the year 2005, even though it was promised to her.

75. Additionally, because Ms. Shapiro was terminated while pregnant, she lost the wages she would have received during her pregnancy and eight weeks of maternity benefits that the Bank pays its employees.

76. As a result of the Bank's discrimination and retaliation, Ms. Shapiro has suffered substantial adverse effects on her career, diminished earning capacity, and substantial physical damage, emotional and psychiatric harm and distress, anxiety, insomnia and depression.

77. Defendants' conduct is discriminatory with respect to each of the following:
sex; disability or perceived disability; and pregnancy.

78. Ms. Shapiro believes she was intentionally discriminated against by the defendants.

COUNT I
Title VII

79. Ms. Shapiro incorporates by reference all of the preceding paragraphs.

80. At all relevant times Ms. Shapiro was an "employee" of the Bank for purposes of Title VII.

81. The Bank has intentionally discriminated and retaliated against Ms. Shapiro by, among other things:

a. denying her career development because of her gender, her pregnancy and her protected anti-discrimination activities;

b. providing her with less favorable compensation and other terms and conditions of employment because of her gender, her pregnancy and her protected anti-discrimination activities;

c. maintaining a work environment that was hostile to Ms. Shapiro, which environment was severe or pervasive enough to alter her terms and conditions of employment;

d. terminating her employment because of her gender, her pregnancy and her protected anti-discrimination activities.

82. Defendants took tangible employment actions against Ms. Shapiro by:

a. altering the conditions of her employment;

b. terminating her employment.

83. Defendants Mr. Kuriyan and COO had the authority to alter the terms, conditions and privileges of Ms. Shapiro's employment.

84. Defendant Mr. Kuriyan's comments and behavior relating to Ms. Shapiro permeated her work environment with discriminatory harassment based on her sex.

85. This harassment was detrimental to Ms. Shapiro, and was sufficiently severe or pervasive as to alter the terms and conditions of her employment and create a hostile, abusive working environment.

86. A reasonable person would have found the harassment and discrimination Ms. Shapiro experienced to be severe, pervasive, hostile and abusive.

87. Mr. Kuriyan's behavior towards Ms. Shapiro because of her sex and/or her pregnancy constitutes a discriminatory policy or practice and a continuing violation lasting until her employment was terminated.

88. The acts complained of herein also constitute a continuing violation because the Bank had notice and knowledge of Mr. Kuriyan's harassment of Ms. Shapiro but permitted it to continue unremedied for so long as to amount to discriminatory policy or conduct.

89. Accordingly, Ms. Shapiro's complaint challenges all discriminatory conduct and harassment by Defendant Mr. Kuriyan (and imputed to the Defendant Bank) as part of the violations complained of herein, even conduct that would otherwise be outside Title VII's limitations period.

90. Defendant Bank failed to exercise reasonable care to prevent and correct promptly Mr. Kuriyan's sexually harassing behavior.

91. Defendant COO failed to exercise reasonable care to prevent and correct promptly Mr. Kuriyan's sexually harassing behavior.

92. Bank' actions constitute discrimination against Ms. Shapiro because of her sex and her pregnancy with respect to the terms, conditions, and privileges of her employment, in violation of Title VII.

93. The reason or reasons given by defendants for Ms. Shapiro's termination are a pretext for sex discrimination and pregnancy discrimination.

94. As a result of Defendants' unlawful discrimination, Ms. Shapiro has suffered substantial damages, including but not limited to physical injuries, mental distress, loss of wages and benefits in an amount to be determined a trial.

95. Since Defendants engaged in discriminatory practices with malice or with reckless indifference for Ms. Shapiro's federally protected statutory rights, Ms.Shapiro also requests an award of punitive damages, in an amount to be determined at trial.

96. Such conduct by Defendants constitutes unlawful discrimination, harassment, and retaliation in violation of Title VII.

97. Such conduct by Defendants constitutes a malicious, willful, and reckless violation of Ms. Shapiro's rights under Title VII.

<u>COUNT II</u>
<u>State HRL</u>

98. Ms. Shapiro incorporates by reference all of the preceding paragraphs.

99. At all relevant times, Ms. Shapiro was an "employee" of the Bank for purposes of §§ 292 and 296, as well as all other relevant sections of the New York State Human Rights Law.

100. Upon information and belief, the Bank is an "employer" for purposes of §§ 292 and 296, as well as all other relevant sections of the State HRL.

101. Defendants violated the State HRL by discriminating against Ms. Shapiro, because of her sex and/or her pregnancy, in terms, conditions and privileges of her employment as described above.

102. Defendants' unlawful discrimination against Plaintiff includes, but is not limited, to harassing Ms. Shapiro and terminating her employment.

103. Defendants Mr. Kuriyan and COO had, at all relevant times, the power to do more than carry out personnel decisions made by others; they had the power and authority to make personnel decisions, including demoting, terminating, or otherwise disciplining the employees they supervised, including Ms. Shapiro.

104. Defendant Mr. Kuriyan also actually participated in acts of discrimination against Ms. Shapiro, as described herein.

105. Accordingly, Defendant Mr. Kuriyan is subject to individual liability under the State HRL.

106. Defendant COO became a party to the acts of discrimination against Ms. Shapiro because he condoned it when he knew of discriminatory conduct but took no action or any affirmative steps to eradicate the sex discrimination.

107. Accordingly, Defendant COO is subject to individual liability under the State HRL.

108. Such conduct by Defendants constitutes unlawful discrimination and harassment in violation of the State HRL.

109. Such conduct by Defendants constitutes a malicious, willful, and reckless violation of the State HRL.

110. As a result of Defendants' unlawful discrimination, Ms. Shapiro has suffered substantial damages, including but no limited to physical injuries, mental distress and lost wages and benefits, in an amount to be determined at trial.

COUNT III
City HRL

111. Ms Shapiro incorporates by reference all of the preceeding paragraphs.

112. Ms. Shapiro is a "person" under § 8-102(1) of the New York City Administrative Code.

113. Upon information and belief, the Bank is an "employer" and "covered entity" subject to the provisions of the City HRL under § 8-102(5) and (17) of the Administrative Code.

114. Defendants violated the City HRL by discriminating against Ms. Shapiro, because of her gender in the terms, conditions and privileges of her employment, as described above.

115. Defendants' unlawful discrimination against Ms. Shapiro includes, but is not limited, to harassing Ms. Shapiro and terminating her employment.

116. Defendants Mr. Kuriyan and COO had, at all relevant times, the power to do more than carry out personnel decisions; they had the power and authority to make personnel decisions, including demoting, terminating or otherwise disciplining the employees he supervised, including Ms. Shapiro.

117. Defendant Mr. Kuriyan also actually participated in acts of discrimination against Ms. Shapiro, as described herein.

118. Accordingly, Defendant Mr. Kuriyan is subject to individual liability under the City HRL.

119. Defendant COO became a party to the acts of discrimination against Ms. Shapiro because he condoned it when he knew of discriminatory conduct but took no action or any affirmative steps to eradicate the sex discrimination

120. Accordingly, Defendant COO is subject to individual liability under the City HRL.

121. Such conduct by Defendants constitutes unlawful discrimination and harassment in violation of the City HRL.

122. Such conduct by Defendants constitutes a malicious, willful, and reckless violation of the City HRL.

123. As a result of Defendants' unlawful discrimination, Ms. Shapiro has suffered substantial damages, including but no limited to physical injuries, mental distress and lost wages and benefits, in an amount to be determined at trial.

124. Since Defendants' discriminatory actions against Ms. Shapiro were taken with malice or reckless indifference to Ms. Shapiro's statutory rights, Ms. Shapiro also requests an award of punitive damages under the New York City Human Rights Law.

COUNT IV
Title VII - Retaliation

125. Ms Shapiro incorporates by reference all of the preceeding paragraphs.

126. Ms. Shapiro opposed unlawful employment practices by informing the Bank that she was 1) significantly underpaid and 2) harassed by Mr. Kuryan. Such activities are protected under § 704(a) of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3.

127. Following such actions, she was subject to ostracism and eventually terminated by the Bank. These actions constitute retaliation in violation of § 704(a) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-3.

128. The defendants' discriminatory practices described above have caused Ms. Shapiro

harm, including emotional distress and loss of wages.

129. Accordingly, the defendants violated Ms. Shapiro's rights protected by § 704 of Title VII of the Civil Rights Act of 1964, as amended.

COUNT IV
Violation of The ADA-Hostile Work Environment

130. Ms Shapiro incorporates by reference all of the preceeding paragraphs.

131. Plaintiff Ms. Shapiro is a "qualified individual with a disability" within the meaning of 42 U.S.C. § 12111(8).

132. Managers and officials of the Bank, including but not limited to Mr. Kuryan and COO, have made and condoned the actions of other employees in making comments and engaging in conduct towards Ms. Shapiro on account of her disability or perceived disability that were not directed towards similarly situated male employees, with the purpose or effect of creating a hostile work environment based upon Ms. Shapiro's disability or perceived disability.

133. These comments and conduct were sufficiently severe and pervasive to alter the terms, conditions and privileges of employment, and to create an abusive, intimidating, hostile and offensive working environment. The Bank did not take reasonable steps to prevent or correct such a hostile environment.

134. This conduct constitutes a violation of the ADA. Defendants had actual and constructive knowledge of harassment of and discrimination against Ms. Shapiro and failed to take remedial action of any kind whatsoever.

135. The defendants' discriminatory practices described above have caused Ms. Shapiro harm, including emotional distress and economic losses.

136. The defendants are liable to Ms. Shapiro for violation of 42 U.S.C. § 12112.

COUNT IV
Violation of The ADA -- Retaliation

137. Ms Shapiro incorporates by reference all of the preceeding paragraphs.

138. After Ms. Shapiro complained about the mistreatment and abuse to which she had been subjected defendants retaliated against her in violation of the ADA.

139. The defendants' discriminatory practices described above have caused Ms. Shapiro harm, including emotional distress and loss of wages.

140. In response to Ms. Shapiro's complaints about the mistreatment to which she had been subjected, defendants retaliated against her in violation the ADA.

141. The defendants' discriminatory and retaliatory practices described above have caused Ms. Shapiro harm, including emotional distress and loss of wages.

142. Accordingly, the defendants violated Ms. Shapiro's rights protected by the ADA, 42 U.S.C. § 12112.

COUNT IX
Intentional Infliction of Emotional Distress

143. Ms. Shapiro incorporates by reference all of the preceding paragraphs.

144. Such conduct by Defendants constitutes intentional infliction of emotional distress, because it is extreme and outrageous, the behavior of defendants was intentional or reckless, and Ms. Shapiro suffered severe emotional distress which was caused by the defendants' outrageous conduct.

145. As a result of Defendants' conduct, Plaintiff has and continues to loose sleep and peace of mind, suffers from depression and anxiety.

COUNT X
Prima Facie Tort

146. Ms. Shapiro incorporates by reference all of the preceding paragraphs.

147. Such conduct by Defendants constitutes prima facie tort.

148. As a result of Defendants' conduct, Plaintiff has and continues to loose sleep and peace of mind, suffers from depression and anxiety.

WHEREFORE, while reserving the right to seek additional damages as available, Plaintiff respectfully requests that upon trial this Court enter judgment:

a. Directing Defendants to make Ms. Shapiro whole by providing her with back pay and reinstatement or front pay in lieu thereof, and compensation for all lost or diminished employment-related compensation or benefits, past or future;

b. Directing Defendants to pay Ms. Shapiro compensatory damages for injury to her person and her reputation, for adverse effects on her career, and for diminished earning capacity resulting from the discriminatory and retaliatory actions of the Defendants;

c. Directing Defendants to pay Ms. Shapiro a portion of its profits during the relevant period as punitive damages to punish and deter continuation of Defendants' unlawful employment practices;

d. Awarding Ms. Shapiro reasonable attorneys' fees and costs, as provided by Title VII, 42 U.S.C. § 1988, and the City HRL;

e. Awarding Ms. Shapiro prejudgment interest on all monies awarded to her; and

g. Granting such additional relief as this Court deems just and proper.

JURY DEMAND

Plaintiff demands a trial by jury on all claims properly triable by a jury.

Dated: Brooklyn, New York
August 23, 2006

Respectfully submitted,

Gary Tsirelman P.C.
By: [signature]
Julia Paskalova (JP0950)
Attorneys for Plaintiff
Alla Shapiro
55 Washington St. Suite 606
Brooklyn, New York 11201
(718) 438-1200

EEOC Form 161 (3/98)

U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

06 CV 6830

To: Alla Shapiro
602 Bridle Path
Wyckoff, NJ 07481

From: New York District Office - 520
33 Whitehall Street
5th Floor
New York, NY 10004

☐ On behalf of person(s) aggrieved whose identity is *CONFIDENTIAL (29 CFR § 1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 520-2006-00159 | Patricia M. Araujo, Investigator | (212) 336-3681 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans with Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge.

☐ Having been given 30 days in which to respond, you failed to provide information, failed to appear or be available for interviews/conferences, or otherwise failed to cooperate to the extent that it was not possible to resolve your charge.

☐ While reasonable efforts were made to locate you, we were not able to do so.

☐ You were given 30 days to accept a reasonable settlement offer that affords full relief for the harm you alleged.

☒ The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☐ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other *(briefly state)*

### - NOTICE OF SUIT RIGHTS -

*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, and/or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this Notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

Enclosure(s)

Spencer H. Lewis, Jr.,
Director

06/12/06
(Date Mailed)

cc: BANK OF AMERICA
Nine West 57th Street
New York, NY 10019
c/o Gerard F. Demone, Esq.
Bank of America
SVP & Case Mgt. Manager, Advisory Srevices
One Federal Street
Boston, MA 02110

Jack Tuckner, Esq.
Tuckner, Sipser, Weinstock & Sipser, LLP
120 Broadway, 18th Floor
New York, NY 10271